UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-24100-CIV-WILLIAMS/SIMONTON

EDWARD SMITH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security Administration,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Edward Smith, ("Plaintiff") and by Defendant Carolyn W. Colvin, ("Defendant"), Acting Commissioner of Social Security Administration, ECF Nos. [21] and [22]. Plaintiff has filed a Reply in support of his motion, ECF No. [24]. This matter was referred to the undersigned Magistrate Judge pursuant to the Clerk's Notice of Magistrate Judge Assignment, for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters, ECF Nos. [3] and [17]. The summary judgment motions are now ripe for disposition.

For the reasons stated below, the undersigned **RECOMMENDS** that the Plaintiff's Motion for Summary Judgment, ECF No. [21], be **DENIED**, that Defendant's Motion for Summary Judgment, ECF No. [22], be **GRANTED**, and the decision denying benefits be **AFFIRMED**.

I.  **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act") on August 17, 2009; and, filed for Supplemental Security Income benefits pursuant to Title XVI of the Act on August 17, 2009.[1]  (R. 24).  In both applications, Plaintiff alleged disability beginning on January 1, 2008.  Both claims were denied initially on October 1, 2009, and upon reconsideration on April 8, 2010.  The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"); and, a hearing was held on November 2, 2011.[2]  (R. 40-57, 58-72).  Plaintiff and vocational expert Lisa J. Goudy testified at the hearing.  (R. 24, 52-56).  Following the hearing, the ALJ issued an unfavorable decision denying Plaintiff's claim for benefits.  (R. 24-34).  Plaintiff requested review with the Social Security Administration Appeals Council, which denied review.  (R. 1-3).  Having exhausted all administrative remedies, Plaintiff timely filed the Complaint in the case at bar seeking judicial review of the Commissioner's decision pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c), ECF No. [1].[3]

II.  **LEGAL ISSUE PRESENTED**

The only legal issue presented is whether the ALJ's decision that Plaintiff did not meet Listing 12.05C, which pertains to Mental Retardation/Intellectual Disability, is

---

[1] The letter "R" followed by a page number is used to designate a page in the Administrative Records, which is contained in ECF No. [15].

[2] There was an initial hearing on April 28, 2011, at which time Plaintiff indicated that Legal Services had agreed to take his case, but no attorney was present in court.  The ALJ therefore rescheduled the hearing.  (R. 67).

[3] Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of Social Security under Title II.  Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), which governs claims for Supplemental Security Income ("SSI") benefits pursuant to Title XVI of the Act, provides for judicial review to the same extent of the Commissioner's final determination under § 205.  The analysis of disability is the same with respect to both bases for claiming Social Security benefits, and cases analyzing disability claims under Title II are equally applicable to Title XVI claims.

supported by substantial evidence.[4]  ECF No. [21] at 3, 13.

### III. STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004);  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).  This restrictive standard of review, however, applies only to findings of fact.  No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo,* including the determination of the proper standard to be applied in reviewing claims.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan*, 894 F.2d at 1529.

---

[4] At the time of the decision in the case at bar, the version of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 in effect was entitled "Mental Retardation" but that has been updated to the title "Intellectual Disability" as of April 1, 2014.  As both parties' motions for summary judgment refer to "mental retardation" based on the dates the motions were filed, the undersigned will use that term.

## IV. THE FIVE-STEP SEQUENTIAL ANALYSIS

The Social Security Administration applies a five-step sequential analysis to make a disability determination. 20 C.F.R. §§ 404.1520(a), 416.920(a).  The analysis follows each step in order, and the analysis ceases if, at a certain step, the ALJ is able to determine, based on the applicable criteria, that the claimant is disabled, or that the claimant is not disabled.

### A. Step One

At step one, the ALJ must determine whether a claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).  In the case at bar, the ALJ first found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010.  (R. 26).  Then, he found that the Plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date.  (R. 26).  These determinations are not challenged.  The analysis proceeded to step two.

### B. Step Two

At the second step, the claimant must establish that he has a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  Step two has been described as the "filter" which requires the denial of any disability claim where no severe impairment or combination of impairments is present.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  This step has also been recognized as a "screening" to eliminate groundless claims.  *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987).  The ALJ must make a severity determination regarding a classification of the claimant's medically determinable impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**To be severe, an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p. The ALJ need only find that the claimant has "at least one" severe impairment.** *Jamison v. Bowen*, **814 F. 2d at 588. "There is no need for an ALJ to identify every severe impairment at step two."** *Tuggerson-Brown v. Commissioner of Social Security*, **No. 13-14168, 2014 WL 3643790, at *2 (11th Cir. Jul. 24, 2014).**

**At step two the ALJ found that Plaintiff had the severe impairment of mild mental retardation (history of a learning disability with impaired reading skills). The ALJ found that this impairment caused more than a minimal limitation in the claimant's ability to perform basic work activities and was therefore severe. (R. 26). This determination has not been challenged. Plaintiff does, however, challenge the ALJ's determination that his knee injury was not a severe impairment. This challenge is not error at step two since the ALJ found that the Plaintiff had at least one severe medically determinable impairment and therefore proceeded to step three. Plaintiff's challenge to the ALJ's severity determination regarding his knee impairment is considered in connection with his step three challenge.**

### C. Step Three

**The third step requires the ALJ to consider if a claimant's impairment or combination of impairments is at the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.1. (commonly referred to as "the Listings"). The Listings are used to streamline the determination of disability by identifying claimants whose medical impairments are so severe that they are**

5

considered disabled regardless of their vocational background, and without the need to consider their residual functional capacity at steps four and five of the sequential analysis, as described below.

In the case at bar, the ALJ found that Plaintiff's severe impairment failed to meet or medically equaled the severity of any one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 27). Plaintiff challenges this finding, claiming that the ALJ's decision was not based on substantial evidence and that he should have been found disabled under Listing 12.05C, which governs Mental Retardation/Intellectual Disability, ECF No. [21] at 3,13. Specifically, Plaintiff contends in addition to the undisputed fact that he met the first requirement of Listing 12.05C, which requires an IQ score of 60 through 70, he also met the second requirement of Listing 12.05C, which requires an additional impairment that imposes a significant work-related limitation of function.

Since the ALJ found that Plaintiff's impairment or combination of impairments failed to meet the criteria of Listing 12.05C, the ALJ proceeded to the fourth step. Plaintiff has not challenged the ALJ's determinations at steps four and five, and has relied exclusively on his challenge to the determination at step three. The ALJ's findings at steps four and five are set forth below for background purposes, and because one of Plaintiff's arguments is that the residual functional capacity determination used by the ALJ at steps four and five, which limited him to light work, is inconsistent with the ALJ's determination at step three that Plaintiff did not suffer from a significant physical work-related impairment in addition to his low I.Q. score.

D. Step Four

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the Plaintiff from performing his past relevant work. First, the ALJ must make a determination of the Plaintiff's residual functional capacity as described in 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity, measures a person's

6

ability to do physical and mental work activities on a sustained basis despite limitations caused by his impairments. In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p; *Tuggerson-Brown,* 2014 WL 3643790, at *2 (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

In the case at bar, the ALJ found that, although Plaintiff's knee impairment was not severe and did "not impose more than minimal functional limitations," giving Plaintiff the benefit of the doubt, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967.[5] (R. 29, 31). The ALJ also found that Plaintiff could perform unskilled work that did not require literacy. (R. 29).

The second phase of step four required the ALJ to make a determination of whether Plaintiff had the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Relevant work has been defined as work performed within the last 15 years and performed long enough so that (1) the claimant could learn to do the job; and, (2) be considered substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. During the second part of step four, the ALJ made the determination that Plaintiff did not have any past relevant work. (R. 32). The process advanced to the fifth step.

### E. Step Five

If the claimant is not able to perform his past relevant work, the ALJ progresses to the fifth step. At this step, the burden of production shifts to the Commissioner to show that other work that Plaintiff can perform exists in significant numbers in the national economy. *Jones v. Apfel,* 190 F.3d 1224, 128 (11th Cir. 1999); 20 C.F.R. §§ 404.1520(g),

---

[5] Plaintiff could lift, carry, push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently. (R. 29). He could sit, stand and/or walk (with normal breaks) for up to 6 hours in an 8-hour work day.

416.920(g). In making this determination, the ALJ considers a claimant's residual functional capacity, age, education, and work experience to determine if the claimant can perform any other work. If the claimant can perform other work, the ALJ will make a finding that the claimant is not disabled.

In the case at bar, at step five, the ALJ found that the Plaintiff was born on May 3, 1984 and was 23 years old, which is defined as a younger individual for purposes of the disability determination. (R. 32). The ALJ found that the Plaintiff was illiterate and able to communicate in English; and that transferability of job skills was not an issue because the Plaintiff had no past relevant work. (R. 32). Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (R. 33). An impartial vocational expert, Lisa J. Goudy, testified that three representative occupations the Plaintiff could perform were: fast food worker; housekeeping/cleaner; and cafeteria attendant. (R. 33, 52-56).

Based on the above analysis, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act from January 1, 2009, through the date of his decision, November 25, 2011. (R. 24).

V. **THE ALJ'S FINDING THAT PLAINTIFF DID NOT MEET LISTING 12.05C IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

A. Introduction

The only issue presented in the case at bar is whether substantial evidence supports the ALJ's determination at step three that Plaintiff did not meet Listing 12.05C, which governs claims based on Mental Retardation/Intellectual Disability. Plaintiff had the burden to establish that his impairment or impairments met or equaled a listed impairment. *Barron v. Sullivan*, 924 F. 2d 227, 229 (11th Cir. 1991). For the reasons

8

discussed below, the undersigned concludes that substantial evidence supported the ALJ's finding that the Plaintiff failed to meet this burden.

The rules governing the determination of disability based on mental disorders are set forth in Listing 12.00. In Listing 12.00A the format for determining the more specifically listed mental disorders is explained. Under this format, in order to meet a specific Listing, the claimant must first meet the diagnostic description in the introductory paragraph for each disorder, and then meet the additional specified criteria. The introductory paragraph for Listing 12.05 provides that:

> Mental retardation [intellectual disability] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 CFR pt. 404, subpt. P, app 1.

Listing 12.05C, which is the only paragraph at issue in the case at bar, contains two criteria that both must be met: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and, (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. There is no dispute that Plaintiff met the criterion of the introductory paragraph and the first specific criterion of Listing 12.05C since he had significantly subaverage general intellectual functioning with deficits in adaptive functioning that were initially manifested before age 22, and an I.Q. score between 60 and 70.[6] The only dispute is whether the second requirement is met – that is, whether Plaintiff had "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

---

[6] The results of Plaintiff's Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) revealed that he had a verbal IQ of 66, performance IQ of 65, and full scale IQ of 64. There is a presumption that mental retardation is a condition that remains constant throughout life. *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001).

The following analysis, therefore, is limited to Plaintiff's claims that he had such an additional limitation based on the severe impairment of mild mental retardation itself, ECF No. [21] at 13; ECF No. [24] at 1; and, based on a severe right knee impairment, ECF No. [21] at 14-16; ECF No. [24] at 2-5.

### B. Additional and Significant Work-Related Limitation of Function

The second criterion of 12.05(C) requires the presence of "an additional and significant work-related limitation of function."  This required degree of limitation is defined in Listing 12.00A as the same as a "severe" impairment under step two of the sequential analysis, 20 C.F.R. §§ 404.1520(c) and 416.920(c).[7]

Plaintiff first states that his severe impairment of mild mental retardation also satisfies the second criterion specified in Listing 12.05C, asserting that this impairment "is the additional mental impairment imposing a significant work related limitation on function," ECF No. [21] at 13.[8]   Plaintiff has not cited any legal authority to support this contention.  In his Motion for Summary Judgment, the entirety of Plaintiff's argument in this regard consists of two sentences:  "The ALJ in this case determined there was no severe impairment other than the mild mental retardation.  One could argue this is the additional mental impairment imposing a significant work related limitation on function." ECF No. [21] at 13.  Plaintiff reiterated this same two sentence argument in his Reply, ECF No. [24] at 1.

---

[7]  An earlier version of Listing 12.05C had been interpreted by the Eleventh Circuit in *Edwards v. Heckler,* 755 F.2d 1513, 1515-16 (11th Cir. 1985) as requiring something more than minimal but less than the "severe" impairment as defined in step two of the sequential analysis.  As noted by the Court in *Carroll v. Astrue,* No. 1:08CV74-SRW, 2009 WL 1708073, at *1 n.2 (M.D. Ala. Jun. 17, 2009), however,  in 2000 the Commissioner modified  introductory paragraph 12.00A to clarify that the definition of a "severe" impairment as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c) applies to the 12.05C determination.

[8] Plaintiff has not argued in his Motion that any other severe mental impairments are present, and has not challenged the ALJ's determination that Plaintiff had no other severe mental impairments.  (R. 27-32).

Plaintiff's argument is an illogical since the impairment that serves as the basis for the Listing cannot also be an "additional" impairment. *See, e.g., L.R.M. v. Soc. Sec. Admin.,* 404 Fed. App'x 415, 417 (11th Cir. 2010) (where claimant's memory problems were related to her borderline intellectual functioning, they were "not a discrete, additional impairment" and thus Plaintiff, whose I.Q. was above 59 and below 70, failed to satisfy Listing 12.05C); *Demps v. Astrue*, No. 3-10-cv-621-J-12MCR, 2011 WL 4530843 (M.D. Fla. Aug. 2, 2011) (impairments in acquiring and using information, attending and completing tasks, and interacting and relating with others, as well as the evaluation of the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation, were not separate and distinct from mild mental retardation and therefore did not satisfy the second criterion of Listing 12.05C). Therefore, Plaintiff's impairment of mild mental retardation cannot be used to satisfy the second criterion of Listing 12.05C since it does not constitute an additional mental impairment.

Plaintiff next argues that his prior knee injury satisfied the criterion for the second part of Listing 12.05C. As discussed below, however, substantial evidence supports the ALJ's determination that Plaintiff's prior knee injury did not impose an additional and significant work-related limitation of function as required by Listing 12.05C. (R. 26-27, 29). Plaintiff injured his right knee playing basketball while he was incarcerated in May 2005. (R. 26, 335). The x-rays revealed a separation of the superior lateral portion of the patella with sclerotic margins representing bipartite patella. (R. 298-342). An MRI revealed an incomplete tear of the anterior cruciate ligament and a grade III complete tear in the posterior horn of the medial meniscus, as well as degenerative changes at the patella. (R. 334). On October 14, 2005, Plaintiff had video arthroscopic surgery of the right knee joint with partial right medial and lateral meniscectomy on October 14, 2005.

(R. 27, 301-302).  Plaintiff was prescribed physical therapy to assist in his recovery.  (R. 311-14).

Plaintiff did not seek any additional medical treatment for his right knee until after his filed his applications for Disability Insurance Benefits and Supplemental Security Income.  (R. 157, 159).  At a periodic health screening performed by the Department of Corrections on December 10, 2006, Plaintiff reported that his health had been good since his last screening and that he was okay.  (R. 300).  A prerelease health care summary reflected that Plaintiff had no "deformities, evidence of abuse or trauma, disabilities or other physical limitations."  (R. 310).

On March 21, 2007, consultative examiner Jozef Hudec, M.D., M.P.H., examined the Plaintiff for chronic right knee pain, and found that Plaintiff demonstrated a normal gait without the use of any assistive device; and was able to walk on his heels and toes and to perform a half squat.  (R. 351-352).  Dr. Hudec noted there was tenderness over the right knee, but found no effusion or instability of the right knee; normal range of motion in all joint groups, including specifically the right knee.  Plaintiff had a grip strength of 5/5; and normal manual dexterity.  (R. 352).  Dr. Hudec also found normal sensation, 5/5 motor strength in all groups in the upper and lower extremities with normal tone throughout all musculature, and equal and intact deep tendon reflexes.  (R. 352).[9]

On March 28, 2007, a second State agency medical consultant, Gary Cater, D.O. prepared a Physical Residual Functional Capacity Assessment.  (R. 343-350).  He opined that Plaintiff could perform a medium range of work, lifting and carrying 50 pounds occasionally and 25 pounds frequently.  (R. 31, 343-350).  Dr. Cater opined that Plaintiff's symptoms were at least partially credible and consistent with the medical evidence on record.  (R. 348).

---

[9] This consultative examination, which predates the filing of the application under review in the case at bar, apparently was performed in connection with a prior application for Social Security benefits.  See R. 158, which notes that a prior application had been filed.

In his August 25, 2009, Disability Report, Plaintiff did not indicate any knee issues or any physical impairment but listed "learning disability, cannot read or write" as his only limiting impairment; although in a Supplemental Pain Questionnaire dated September 7, 2009, he stated that he experienced pain from his injury that affected his ability to stand and walk. (R. 205, 228).

On October 21, 2009, Plaintiff was treated at the Family Health Center by Juan F. Arteaga, M.D. Dr. Arteaga examined Plaintiff on October 21, 2009 and noted a past medical history of knee fracture. (R. 405). Plaintiff was assessed with knee joint pain and tobacco use. Plaintiff was prescribed 600 milligrams of Ibuprofen. (R. 406). Plaintiff was seen once more by Dr. Arteaga on December 2, 2009. Dr. Arteaga again examined the Plaintiff, and noted in the History of Present Illness section that Plaintiff: had anterior right knee joint pain that was worse with weight bearing; it appeared with prolonged sitting; was increased by kneeling; there was no right knee joint swelling or right knee joint stiffness; and Plaintiff was able to straighten the right knee and the knee did not suddenly buckle. (R. 403). Dr. Arteaga noted that a knee x-ray was performed and he assessed Plaintiff with knee joint pain and osteoarthritis of the knee. (R. 404). Plaintiff was prescribed 600 milligrams of Ibuprofen. (R. 404).

Afzal H. Khan, M.D. performed a consultative examination on March 9, 2010 and found that that Plaintiff had no assistive device regarding ambulation/gait and station; Plaintiff favored his right knee somewhat while walking; had no difficulty getting off of the exam table; had normal heel and tow walking/hopping and squatting. (R. 395). Dr. Khan noted intact grip/dexterity and that Plaintiff was on no medications. (R. 395). Plaintiff showed no joint swelling or deformities; Plaintiff's range of motion appeared normal in all major joints; and, his ankle showed normal range of motion bilaterally. (R. 395). Dr. Khan stated that Plaintiff had normal range of motion on the knee on the right side, (R. 396), and that Range of Motion Report Form reflects that Plaintiff had full range

13

of motion in all areas, including his knees and ankles. (R. 397). Dr. Khan's diagnostic conclusions were: chronic right knee pain post trauma with a history of arthroscopy surgery on right knee; history of depression, without treatment; history of learning disability with impaired reading skills. (R. 395-396). Dr. Khan noted that an X-ray of Plaintiff's right knee revealed normal bony articular surface with intact joint space and no fractures, dislocations, or subluxations. (R. 396).

On April 7, 2010, Ira Price, M.D., a State agency medical consultant reviewed the Plaintiff's records. He noted that Plaintiff had a history of right knee and ankle injuries with some residual pain, but the consultative examination and medical records reflected a general examination within normal limits, and the neuromuscular examination was also within normal limits with full range of motion. He therefore concluded that Plaintiff had no severe physical impairment. (R. 31, 399).

On October 12, 2010, Plaintiff went to Memorial Hospital complaining of right leg and knee pain. (R. 416). He stated that the pain had started the preceding Sunday. (R. 437). The hospital records noted Plaintiff's back was normal; his pelvis and hips were normal; and that he had right calf tenderness. (R. 418). Plaintiff was given an x-ray, was diagnosed with tendinitis/bursitis, and was referred to an Orthopedist. (R. 419). The x-rays showed old ovoid fragment of the upper lateral patella, showing a couple millimeters of distraction. There was no definite acute fracture, no dislocation or radiopaque foreign bodies and no obvious effusions. (R. 412). Plaintiff was prescribed Voltaren 75 milligrams every 12 hours as needed for pain. (R. 419).

On January 9, 2011, Plaintiff went to Memorial Hospital complaining of a sore throat. A complete physical examination was conducted, which reflected that all extremities were normal. (R. 444). The pain assessment on that date reflects only sore throat pain. (R. 445).

Plaintiff's mother, Pamela White completed a Third Party Function Report. (R. 218-225). Ms. White noted that Plaintiff lived in a house with family; sometimes needed special reminders to take care of personal needs and grooming; prepared his own meals every day; did his daily chores; liked to watch sports on television; spoke to others on the phone; walked outside or rode in a car every day; shopped in stores for food; paid bills, but could not count change; and, stated that Plaintiff was limited in his ability to bend, kneel, climb stairs, and remember. (R. 218-225).

Plaintiff completed a Function Report and described that he prepared sandwiches, made complete meals, including soul food, and "many more" types of food; he performed weekly chores that took him half of a day to complete, including cleaning, cutting grass, ironing, sweeping, and taking out the trash.[10] (R. 229-236). Plaintiff claimed that he walked every day or rode in cars, shopped in stores but was not able to handle money. (R. 232). He reported that his interests included watching football and attending games, dancing, watching television, basketball, and talking on the phone. (R. 233). He reported that he spent time with others talking, having fun, and caring for them. (R. 233).

At the hearing, Plaintiff testified that he had a right knee injury and had problems walking a long distance. (R. 49-50). Plaintiff stated he could not walk more than two blocks without his knee aching and could only stand for five minutes. (R. 50). Plaintiff testified that he helped out his "baby momma" when she was tired by washing dishes, cleaning the house, and bathing his baby. (R. 51).

In his Motion for Summary Judgment, Plaintiff argues that the ALJ should have found that the Plaintiff's right knee condition that resulted from his prior injury

---

[10] The Plaintiff's self-reported house and yard work somewhat contradicted his claim that he resided outdoors. (R. 229). Moreover, Ms. White documented that her son lived in a house with family two days before Plaintiff completed his Function Report, where he asserted that he lived outdoors. (R. 218, 229). At the hearing, Plaintiff testified that he stayed with his "baby momma," although the duration of that residence is unclear (R. 50).

significantly affected Plaintiff's ability to maintain employment and therefore qualified as a severe impairment; and, that the ALJ "dodge[d] the application of Listings 12.05C, ECF No. [21] at 13.  The undersigned concludes that Plaintiff's arguments are without merit.  For the reasons stated below substantial evidence supports the ALJ's determination that Plaintiff failed to meet his burden to demonstrate that his prior knee injury imposed an additional and significant work-related limitation of function as required by Listing 12.05C.  (R. 26-27, 29).

At step two, the ALJ conducted thorough analysis of Plaintiff's physical symptoms associated with his knee injury.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1512(a), 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p.  Although Plaintiff attempts to refute this by reviewing the medical evidence regarding Plaintiff's knee injury, as well as reviewing unrelated trips to the doctor, he has failed to explain why substantial evidence does not support the ALJ's determinations that Plaintiff's complaints regarding his limitations were not credible and, that Plaintiff's ability to perform work was not significantly limited his knee condition.  The ALJ reviewed the medical examinations and treatments received by Plaintiff, and found that "nothing in the record support[ed] a finding that this condition impose[d] more than minimal functional limitations." (R. 27).  Thus, the ALJ found Plaintiff's knee injury was a non-severe impairment that did not satisfy the criterion of Listing 12.05C. (R. 27, 29).

Plaintiff makes much of the fact that during step four, the ALJ found that the Plaintiff had the residual functional capacity to perform light work.  20 C.F.R. §§ 404.1567(b), 416.967(b). In limiting Plaintiff to light work, however, the ALJ was careful to note that this was done in an abundance of caution, and the ALJ explicitly reaffirmed his

prior determination that Plaintiff's knee injury was not severe, expressly stating that the record supported "a finding that the claimant has no severe physical impairment as his history of right knee injury and alleged right knee pain does not impose more than minimal functional limitations." (R. 31).

In making the determination that the Plaintiff could perform light work, the ALJ found that the Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. (R. 30). The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (R. 30).

The ALJ found that Plaintiff's assertion that he was unable to perform any sustained activity for an eight-hour day due to a combination of mental impairments was "simply not credible." (R. 31). The ALJ found that no treating provider had imposed any such limitations on the Plaintiff. (R. 31). The ALJ concluded that Plaintiff's alleged limitations were self-limiting. (R. 31). Further, the ALJ found that nothing in the medical record reflected a treatment regimen inconsistent with Plaintiff's ability to perform light work, which requires the ability to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; and to sit, stand and/or walk (with normal breaks), for a total of about 6 hours in an 8-hour workday. (R. 29, 31).

The ALJ noted that Plaintiff's credibility was compromised by his felony convictions for first degree attempted murder and grand theft. (R. 31, 339-340). In addition, during the April 28, 2011 hearing, Plaintiff testified that he had filed a fraudulent tax return and had received a refund check, which he had paid back. (R. 64-67). When the ALJ inquired about a driver's license, Plaintiff testified that his ex-girlfriend had taken the computer portion of the exam on Plaintiff's behalf, and that he had only performed the driving portion. (R. 51). The ALJ also noted that Plaintiff's credibility was

compromised by his prior felony conviction. (R. 31). In addition, the ALJ found that neither Plaintiff's subjective complaints nor his mother's reports were consistent with the preponderance of opinions and observations by credible medical doctors. (R. 31, 32). Plaintiff never sought any additional treatment for his knee until he filed his applications with the Social Security Administration, which called in question the intensity and alleged debilitating effects of Plaintiff's post-surgery knee pain. Further, on the Plaintiff's application, he only identified his mental health condition as an impairment, and did not specify physical limitations. (R. 205). Therefore, substantial evidence supported the ALJ's credibility determinations.

In sum, the ALJ reviewed all of the medical and other evidence in the record, and found that Plaintiff's prior knee injury did not impose more than minimal functional limitations on Plaintiff. (R. 27). It is clear that not every knee injury results in a severe impairment. *See, e.g., Irby v. Halter*, 171 F. Supp. 2d 1287 (S.D. Ala. 2001) (arthritic right knee not a severe impairment); *Campbell v. Comm'r of Soc. Sec.*, No. 13-10074, 2014 WL 1305011 (E.D. Mich. Mar. 28, 2014) (left knee mild arthrosis not a severe impairment). In the case at bar, the medical records and opinions, the lack of treatment prior to the disability claim, the activities Plaintiff engaged in, and Plaintiff's lack of credibility all provide substantial evidence to support the ALJ's determination that Plaintiff's knee injury did not result in a severe impairment.

## VI. CONCLUSION

Based upon a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff failed to meet his burden to show that any of his impairments other than mild mental retardation were severe impairments that would have more than a minimal effect on Plaintiff's ability to perform basic work activities. Since substantial evidence supports the ALJ's determination that Plaintiff did not meet all of the requirements of Listing 12.05C, the

decision of the ALJ should be affirmed. Therefore, based on the foregoing analysis, the undersigned Magistrate Judge hereby

**RECOMMENDS** that the Plaintiff's Motion for Summary Judgment, ECF No. [21], be **DENIED**, that Defendant's Motion for Summary Judgment, ECF No. [22], be **GRANTED**, that the decision denying benefits be **AFFIRMED**, and that **FINAL JUDGMENT** be entered in favor of the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Edward Smith.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties have until March 27, 2015, to serve and file written objections, if any, to this Report and Recommendation. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders*, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida on March 14, 2015.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**

The Honorable Kathleen M. Williams,
    United States District Judge

**All counsel of record**